## COHANSEY GLASS MANUF'G CO. *v.* WHARTON.[1]

(*Circuit Court, E. D. Pennsylvania.* May 14, 1886.)

1. PATENTS FOR INVENTIONS—CONSTRUCTION OF CLAIMS.
   One claim of a patent should not be so construed as to render another claim of the patent meaningless.
2. SAME.
   The first claim of the patent was for certain elements in combination with "suitable gearing," and the second claim embraced the same elements in combination with "cog-gearing." *Held,* that the first claim embraced any suitable gearing which might be employed as a substitute for the cog-gearing described in the second claim
3. SAME—ANTICIPATION—BURDEN OF PROOF—PRESUMPTION OF ORIGINALITY.
   The burden of proof of anticipation is on the defendant, who, to repel the presumption of originality arising from the patent, must remove all reasonable doubt respecting the fact of anticipation.

In Equity.
*George Harding* and *Francis T. Chambers*, for complainant.
*M. D. & L. L. Leggett*, for defendant.

BUTLER, J. The suit is for infringement of the first and second claims of letters patent No. 180,584, issued August 1, 1876, to Thomas Hipwell, for an improvement in machines for grinding the mouths of glass vessels. The answer denies validity of the patent, averring want of novelty, and further denies the alleged infringement. On the argument two questions only were presented, or pressed, and no other will be considered. The first was the construction of the patent, and the second its validity, (as respects the first claim, if the language therein employed is not confined to the specific cog-gearing described in the second claim.)

An examination of the prior state of the art shows but one character of machine constructed and used for grinding the mouths of glass vessels. This is represented by the machine of Kelly and Samuels.

[1] Edited by Charles C. Linthicum, Esq., of the Chicago bar.

It was very imperfect, and its use subject to serious disadvantages. The bottles were not confined in their places, not controlled in their motions, so completely as to prevent wabbling on the grinding disk and violent spinning around under the influence of the machine and their own momentum thus imparted, in consequence of which the grinding was uneven, the mouths of the vessels rendered irregular, and many of them broken. In this state of the art it occurred to Hipwell, who had experience in the business, and was familiar with the machine in use, that this serious imperfection in its construction, and disadvantage in its use, might be removed and avoided by changing the construction, and adding new features, as described in his patent; that by this means the vessels would be firmly held in position, and given a regular, gentle motion around their own axis, while the cap and spindle (by which the vessel is secured and controlled) could be freely shifted perpendicularly, so as to allow the removal and replacement of the vessels without stopping the work. He embodied this conception in a machine, and obtained a patent. His claims, three in number, are as follows:

"(1) In a machine for grinding the mouths of vessels, the combination of a grinding disk with a plate, N, having openings for receiving the necks of the vessels, and with caps, n, and spindles, K, through the medium of which, and suitable gearing, each vessel is caused to revolve on its own axis while it is carried around in a circle with the plate, N, all substantially as set forth. (2) The combination of the shaft, F, and stationary cog-wheel, G, the spindles, K, caps, n, and pinion, M, carried by the arms, m, on the said shaft, and the plate, N, with its openings, all substantially as set forth. (3) The combination of the plate, N, and its openings, with lips, t, projecting from the edge of each opening, as set forth."

The patent is for a combination of the spindle and cap, and the lower ring-plate, into which the mouth of the vessel passes, with gearing to revolve it around a center, at the same time revolving each jar spindle and jar on its own axis.

The first claim, which seems to embrace most, if not all, that is material in the invention, the defendant thinks should be limited to a combination of the first two elements described therein (if the claim may be so divided) with the cog-gearing, which is the subject of the second claim. This construction would, of course, render the second claim unmeaning, which shows that neither the patentee nor the patent-office contemplated it. An argument to the contrary, however, is based on the following language of the specifications:

"A prominent advantage of the planetary movement imparted to the series of vessels is the effective distribution of the granular grinding material on the face of the disk; but I do not desire to claim, broadly, mechanism for causing a series of articles to be ground to revolve around a common center, while each revolves on its own axis, as this is well known."

It is certainly plain that the patentee did not intend to claim the planetary motion of his device, nor the machinery for producing it, separated from the other elements of the invention. He says he

knew it to be old, and was doubtless aware of its employment in a machine for grinding buttons constructed by Capewell. His invention consisted in combining this principle or element, with the features of the Kelly and Samuels machine, before adverted to, and in so providing for its operation as to allow the vessels to be removed and replaced without interrupting the work, thus obviating the defects of the old machine, and producing a new and highly beneficial result. I cannot, therefore, adopt the defendant's construction. It would not only ignore the second claim, as we have seen, but would impute to the patentee the folly of taking a patent which could be avoided and rendered worthless by the mere substitution of an ordinary equivalent for the controlling element claimed; and it would, furthermore, impute to the patent-office the folly of issuing, as well as to himself the folly of taking, a patent plainly invalid on its face; for the claim construed as the defendant argues was intended, excluding the belt gearing as old, would be a claim simply for a well-known equivalent of an old device. The defendant's own expert, as well as the plaintiff's, seems to be against him on this question.

The claim must be understood, broadly, as described by its terms, embracing any "suitable gearing" which may be employed as a substitute for the cog arrangement described in the second claim. So construed, the defendant denies its validity, and thus raises the second question involved. This denial rests on the averment of anticipation. The only evidence of anticipation cited and urged on the argument, was the existence and use of three glass-grinding machines made in pursuance of orders from Kelly and Samuels, by Kreider & Campbell, machinists,—one in use at Clyde, New York; another, at Rowley's Glass-works; and another, at Samuels' Glass-works. That the first two of these machines contained the belt arrangement (similar to defendant's) during the last six or eight years of their use is undisputed. They were constructed, as was also the last named, and put in employment, much earlier, antedating the plaintiff's patent several years; and the defendant contends, and has endeavored to prove, that this device was on them when originally constructed. On the other hand, the plaintiff avers and has produced evidence to show that the device was first applied subsequently to his invention. The burden of proof is on the defendant, who, to repel the presumption of originality arising from the patent, must remove all reasonable doubt respecting the fact. Many witnesses were called on both sides, and their testimony is contradictory and irreconcilable. If the question rested on this evidence alone, it would be impossible to declare with safety how it should be decided. When, however, the books of Kreider & Campbell, the manufacturers of the machines, and of the repairs and additions put upon them, are examined, the weight of the evidence seems pretty clearly to be with the plaintiff. These books are virtually a history of the machines, showing the date of manufacture, and all that was done respecting them subsequently. Their

accuracy is undoubted, and certain of the entries seem to show quite satisfactorily that the belting and its accompanying fixtures were furnished long after the original construction of the machines, and after the announcement of the plaintiff's invention.

As respects the other machine (used at Samuels') we have not such record evidence. It appears, however, from the testimony on both sides, I think, that it was not orginally constructed with the belt-gearing, or that this gearing was ever applied to it. It would seem that in an effort to remedy its defects, a cord or belt was bound around the spindles or jars to hold them down. This, of course, would prevent the perpendicular motion of the spindles, and consequently the removal and replacement of the jars while the machine was running. I do not think the testimony of Samuels would warrant any other conclusion. What Whitely says is entitled to little, if any, weight. Huttenlock shows no more than that a belt was experimented with, as just indicated. Williamson, whose knowledge of the machine extends to a period much more recent, fully justifies the conclusion stated. He worked on it at Samuels' in 1872, and subsequently elsewhere, seeing it as lately as 1884. The inferences from surrounding circumstances point to the same result. This machine, as well as the two others before referred to, were made according to the Kelly and Samuels' invention, and the presumption is very strong that there was no difference in their construction, and that neither had the belt-gearing here involved. Indeed, it would seem clear that this machine had not, otherwise the application of a band to the spindles or jars, to which Samuels and others testify, could hardly have been necessary, or thought of.

It would be idle to enter upon an extended discussion of the evidence relating to this question of anticipation; it could serve no useful purpose. I have examined it with care, and, to say the least, it falls short, as already indicated, of satisfying me that the defendant's averment is well founded. The presumption of novelty must, therefore, stand.

The question of infringement requires but few words. It was involved in the construction of the patent, and is settled by the conclusion reached respecting this. The belt-gearing is a well-known and exact equivalent for the cog arrangement. Manifestly, it is so, judged by appearances, and the result of use alone; it is, moreover, testified to be so by the experts on both sides.

A decree will be entered accordingly.